Dear Mr. Lumpkin:
On behalf of the Industrial Development Board of the Parish of Calcasieu, Inc. (the "Board") you have requested an Attorney General's opinion regarding the ad valorem tax exemption of property owned by the Board. You indicated the Board is working with Liberty Gas Storage LLC ("Liberty") to encourage the location of a natural gas storage facility in the Parish of Calcasieu. The Board, created under Chapter 7 of Title 51 of the Louisiana Revised Statutes of 1950, as amended, (the "Act") plans to issue revenue bonds pursuant to the Act and use the proceeds to finance the construction of a natural gas storage facility in the Parish (the "Project").
You advise that simultaneously with the issuance of the bonds, the Board will acquire the Project from Liberty and lease the Project back to Liberty. The purchase price of the project will be the actual cost of the Project and Liberty will be required to repay the entire cost, plus interest to the date the bonds are paid off in the form of lease payments. The rental payments under the lease agreement between the Board and Liberty will be an amount equal to debt service on the bonds, together with certain fees and expenses of the Board and the bond trustee. Liberty will also agree to pay, in addition to the rental payments under the lease agreement, all costs of construction of the Project. The Board is not injecting anything of value into the transaction, other than the financing itself.
You question whether the property owned by the Board pursuant to the Act will be exempt from ad valorem property taxes, and whether the Board may require a payment in lieu of taxes in an amount not exceeding the amount that would have been paid in ad valorem taxes.
La. Const. (1974) Art. VII, Sec. 21 provides a list of property that shall be exempt from ad valorem taxation. "Public lands; other public property used for public purposes" is *Page 2 
included within the list of exempt property. Article VII, Section 21(A), when referring to the tax exempt status of public property, other than public lands, imposes a two-fold requirement that:
 (1) Title to the property must vest in the public; and
 (2) The property must be used for a public purpose.
See Slay v. Louisiana Energy and Power Authority,473 So.2d 51 (La. 1985).
Industrial Development Boards are nonprofit public corporations organized pursuant to R.S. 51:1151, et seq. for the purpose of promoting the existence, development and expansion of commerce, trade and industry in this state. With regard to Industrial Development Boards, R.S. 51:1152 provides, in pertinent part:
 A. The legislature hereby finds and determines:
 (1) That the existence, development and expansion of commerce and industry are essential to the economic growth of the state and to the full employment, welfare and prosperity of its citizens;
 * * * * * * * * * * * * * * * * * * * * * *
 (4) That the present and future health, safety, right to gainful employment, and the general welfare of the people of the state merit and require the assistance of the state, its agencies, and political subdivisions in the development within the state and its political subdivisions of industrial, agricultural, manufacturing, and research enterprises . . . and in the attraction and retention of sound business and commercial enterprises which contribute to the economic growth and vitality of the state and its political subdivisions;
 * * * * * * * * * * * * * * * * * * * * * * * * *
 (6) That the means and measures herein authorized by this chapter and the assistance provided in this chapter, especially with respect to financing, are in the public interest and serve a public purpose of the state in promoting the health, welfare, and safety of the citizens of the state . . . by the securing and retaining of private industrial, commercial and other enterprises and the resulting maintenance of a higher level of employment and economic activity and stability.
 B. It is the intent of the legislature by passage of this Chapter to authorize the incorporation in the several municipalities or in the parishes in this *Page 3 
state of public corporations to acquire, own, lease, rent, repair, renovate, improve, finance, sell, and dispose of properties to the end that such corporations may be able to promote industry and develop trade by inducing manufacturing, industrial, commercial and other enterprises to locate in this state and further the use of its agricultural products and natural resources . . . and to acquire, own, lease, rent, repair, renovate, improve, finance, sell, and dispose of properties to the end that such corporations may be able to attract and retain business and commercial enterprises in the municipality or parish to maintain and expand employment and the economy in the area.
Additionally, R.S. 51:1160 pertinently provides:
 The corporation is hereby declared to be performing a public function on behalf of the municipality or parish with respect to which the corporation is organized and to be a public instrumentality of such municipality or parish. Accordingly, the corporation and all properties at any time owned by it and the income therefrom and all bonds issued by it and the income therefrom shall be exempt from all taxation in the state of Louisiana; provided, however, that the corporation may require the lessee of each of the projects of the corporation to pay annually to parish or municipal taxing authorities, through the normal collecting agency, a sum in lieu of ad valorem taxes
to compensate such for any services rendered by them to such projects which sum shall not be in excess of the ad valorem taxes such lessee would have been obligated to pay to such authorities had it been the owner of such project during the period for which such payment is made. (Emphasis added).
In Attorney General Opinion No. 77-916 our office concluded that, in accordance with the constitutional and statutory provisions quoted hereinabove, all property held in the name of Industrial Development Boards is exempt from all ad valorem taxation in the State of Louisiana. Additionally, this office previously recognized that the fact that public property is leased to a private entity does not preclude it from being used for a public purpose so as to be exempt. See Attorney General Opinion Nos. 93-392 and 89-599.
Our office previously opined that, where property titled in an Industrial Development Board is leased to a developer or other private user, the property is exempt from ad valorem taxation. See Attorney General Opinion Nos. 88-454, 93-642, 99-267 and 05-0301.
Based upon the foregoing, it is the opinion of this office that, while the property is leased to the private developer and title to the property is held by the Board, the property will be exempt from ad valorem taxation. Furthermore, the Board may negotiate and *Page 4 
require a payment in lieu of tax during the term of the ownership of the Project by the Board and the lease of the Project to the Developer, in an amount not in excess of the amount that would be paid in taxes if the Project were subject to ad valorem taxes.
Trusting this adequately responds to your request, we remain
Yours very truly,
 CHARLES C. FOTI, JR. ATTORNEY GENERAL
 BY: ______________________________ KENNETH L. ROCHE, III Assistant Attorney General *Page 5 
 ATTACHMENT OPINION NUMBER 88-454
 122 — Taxation — Exemption from property taxes
 — new industry
 Mr. Don J. Hernandez 148 — Taxation — Property taxes — liability of
 Chief Deputy City Attorney persons property.
 City of New Orleans Art. VII. § 21 of Louisiana Constitution: R.S.
 Office of the City Attorney 51:1160; R.S. 51:1152
 1300 Perdido, Room 2W23
 New Orleans, LA 70112 Ad Valorem Taxes — discussion of payment in
 lieu of taxes.

Dear Mr. Hernandez:
You requested the opinion of this office concerning the proposed issuance of $2,000,000 of taxable industrial revenue bonds by the Industrial Development Board of the City of New Orleans, Inc. (the "Issuer") to finance a portion of the cost of the acquisition, construction, equipping and installation of a warehouse and distribution facility to be located in the Almonaster Michoud Industrial District in New Orleans (the "Project"). The beneficiary of the financing will be West Coast Liquidators, Inc. (the "Developer"), a California corporation which is a wholly owned subsidiary of Pic-N-Save Corporation.
The City of New Orleans (the "City") which owned the property upon which the Project is to be located, sold the land to the Issuer who is leasing the land and the Project to the Developer. The Project will be conveyed to the Issuer in stages as each phase of the construction is completed. At the expiration of the lease, the Developer will have the option to purchase the property at market price. Ownership of the Project will be conveyed to the Developer at the termination of the lease upon payment by the Developer to the Issuer of Two Million Dollars ($2,000,000.00), the price at which the Issuer acquired the Project from the Developer, which payment will be used to pay off the bonds.
The Issuer intends to require payments from the Developer in lieu of taxes pursuant to R.S. 51:1160 in an amount equal to $500,000 per annum, which is presently *Page 6 
approximately one-half of the amount per annum the Developer would be required to pay if the Project was on the tax rolls. The Developer will also pay the cost of services provided to it by the City. The in lieu of tax payments is required as long as the Project and the land upon which the Project is to be located are leased to the Developer. The Project will be conveyed to the Issuer in stages as each phase of the construction is completed. In the event the bonds are prepaid or the lease term exceeds forty years, for each year thereafter, the Developer will be required to pay, as in lieu of tax payments, an amount equal to the amount that the Developer would be obligated to pay if the property were on the tax rolls.
This office has been supplied with a copy of a lease agreement between the Issuer, the Developer and the City. Also furnished this office was a committment for title insurance for the leasehold interest of the Developer in the property in the amount of $50,000,000 from a title insurance company and an opinion of the New Orleans City Attorney opining as to the legality of the agreement and the structure of the proposed financing.
You advised that the principal motivation for the issuance of the bonds is the exemption from ad valorem taxes pursuant to R.S.51:1160 which will occur as a result of the Issuer's taking title to the project and leasing it to the Developer.
Your question is as follows:
1. Will the Project and the property be considered exempt from ad valorem taxation while leased to the Developer if title thereto is held by the Issuer?
Article VII, Section 21 lists the exemptions, in addition to the homestead exemption, from ad valorem taxation. Exempt property includes "public land; other public property used for public purposes." Article VII, Section 21(A).
R.S. 51:1160 provides in pertinent part as follows:
 "The corporation is hereby declared to be performing a public function on behalf of municipality or parish with respect to which *Page 7 
the corporation is organized and to be a public instrumentality of such municipality or parish. Accordingly, the corporation and all properties at any time owned by it and the income therefrom and all bonds issued by it and the income therefrom shall be exempt from all taxation in the state of Louisiana; provided, however, that the corporation may require the lessee of each of the projects of the corporation to pay annually to parish or municipal taxing authorities, through the normal collecting agency, a sum in lieu of ad valorem taxes to compensate such authorities for any services rendered by them to such projects which sum shall not be in excess of the ad valorem taxes such lessee would have been obligated to pay to such authorities had it been the owner of such project during the period for which such payment is paid. . . ." (Emphasis supplied)
The legislative findings and intent for the Municipal and Parish Industrial Development Boards Act, R.S. 51:1151, et seq., is contained in R.S. 51:1152 which provides in pertinent part as follows:
 "A. The legislature hereby finds and determines:
 (1) That the existence, development and expansion of commerce and industry are essential to the economic growth of the state and to the full employment, welfare and prosperity of its citizens;
 * * *
 (4) That the present and future health, safety, right to gainful employment, and the general welfare of the people of the state merit and require the assistance of the state, its agencies, and political subdivisions in the development within the *Page 4 
state and its political subdivisions of industrial, agricultural, manufacturing, and research enterprises; . . . and in the attraction and retention of sound business and commercial enterprises which contribute to the economic growth and vitality of the state and its political subdivisions;
 * * *
 (6) That the means and measures herein authorized by this chapter and the assistance provided in this chapter, especially with respect to financing, are in the public interest and serve a public purpose of the state in promoting the health, welfare, and safety of the citizens of the state, . . . but also economically by the securing and retaining of private industrial, commercial and other enterprises and the resulting maintenance of a higher level of employment and economic activity and stability.
 * * *
 B. . . . This Chapter shall be liberally construed in conformity with the intentions herein expressed."
Based upon the foregoing it is the opinion of this office that while the property is leased to the Developer and title is held by the Issuer, the property will be exempt from ad valorem taxes pursuant to the provisions of Article VII, Section 21(A) of the Louisiana Constitution and R.S. 51:1160.
Trusting this adequately responds to your request, I remain
Sincerely,
 WILLIAM J. GUSTE, JR. Attorney General
 BY: __________________________ MARTHA S. HESS Assistant Attorney General *Page 5 
 OPINION NO. 89-599
 4 — ASSESSORS
 The City's title and the leasehold interest
 Mr. Stewart Walker in the City's property should be separately
 Chief Administrative Officer assessed. Property leased by City may be
 City of New Orleans exempt if used for a governmental purpose
 Room 9E01 City Hall or one reasonably incidental thereto.
 New Orleans, LA. 70112

Dear Mr. Walker:
Your recent inquiry has been referred to me for attention. Your questions, as I understand them, are as follows:
 Whether it is possible to separately assess land and a building owned by the City of New Orleans from the assessment of the leasehold improvements therein; and
 Whether the property owned by the City, which will be leased for public purpose of improvement of the downtown area as well as the restoration of this building to its original historic elevations, should be exempt from ad valorem real estate taxation despite the rental received by the City?
The D.H. Holmes Canal Street property acquired by Dillard's was then donated by the latter for the restoration, improvement and development of the Central Business District to the Canal Street Development Corporation which was created by the City pursuant to the public benefit law. R.S. 41:1215. The Public Benefit Corporation intends to lease this property to a developer who expects to spend approximately $20,000,000 in improvements whereby the property will be converted into a hotel, entertainment center, parking garage and apartments. The title to the leasehold improvements will belong to the developer, and the developer will pay taxes on these improvements while the City has title to the land and building. Therefore, an assessment is sought separately for the lessees' leasehold improvements, but the assessor questions this procedure.
We have no doubt that property owned and used by the City for a public purpose is not subject to ad valorem taxation. Art. 7, Sec. 21, La. Const. 1975. However, property *Page 6 
owned by the City and leased to a private entity strictly for private purpose has no exemption and must be assessed. As observed by the Court in Schulingkamp v. Heaton,455 So. 2d 1181 (La.App. 1984), "Allowing improvements on tax exempt property to be themselves tax exempt when used for a private purpose would lead to very inequitable results in this City's tax scheme."
Therefore, in answer to your first question, we can see no reason why the separate assessments sought by the City and the leasehold interest should not be done in order to properly exempt that portion subject to exemption and taxation of that which should be taxed.
As concluded by this office in Attorney General Opn. No. 76-114, our office does not have the authority to make a decision as to whether any particular taxpayer is exempt, as that decision is based upon a factual determination, but we can furnish our opinion as to the applicable law which may be used in making individual decisions.
As observed above, Article 7, Section 21 of the Constitution of 1974 exempts from ad valorem taxation "Public lands, other public property used for public purposes." Therefore, the question is not simply whether the title is in a public entity, but the use of the land must also be considered. Moreover, the fact that public property is leased to private business does not preclude it from being for a public purpose which would likewise be exempt.
In Charleston County Aviation v. Wasson, 289 S.E. 2d 416
(S.C. 1982) the Constitution provided exemption from taxation would extend to "all property of the state, counties, municipalities, school districts and other political subdivisions, if the property is used exclusively for public purpose." The question therein was whether property of the Charleston County Aviation Authority was exempt, and the Court observed the fact that property is used by a private business entity does not preclude the use from being for a public purpose. It was concluded air transportation, land transportation, a place to park and available food all are customarily performed by private business but are recognized as a necessary part of an airport and incidental to the public use. However, two of the lessees that provided a terminal, fuel and repair facilities and other incidental services and charters were found to be used for a non-exclusive public purpose in that "the primary beneficiaries of the use of this property are the two private companies." The Court found as a general rule a public purpose has for its objective the promotion of public health, safety, morals, general welfare, *Page 7 
security, prosperity and contentment of all inhabitants or residents or at least a substantial part thereof. State v. Cityof Columbia, 115 S.C. 108, 104 S.E. 337 (1920), is cited wherein the Court held the leasing of a theater in the City hall to a private person still qualified as a public purpose where the revenue was incidental for it was an expedient way of giving effect to the public purpose for which the theater was often used. Therefore, when the use is for a public purpose, an incidental private use or benefit will not negate or alter that public purpose and use of the property.
Similar reasoning is seen in Tri-County Public AirportAuthority v. Board of County Commissioners, 245 Kan 301,777 P.2d 843, (1989) and Salina Airport Authority v. Board of TaxAppeal, 13 Kan App. 2d 80, 761 P.2d 1261, (1988), where the Court sought to determine if there was governmental use, stating the mere fact the authority received rental income does not constitute "use" within the statute when there was no public function of government being carried out upon the leased property. The ownership of the property which produces revenues which finance governmental functions was not within the meaning for a tax exemption.
Likewise, in Town of Harrison v. Co. of Westchester,246 N.Y.S.2d 593, 196 N.E.2d 240, (1963), the Court held while the revenues of hangers leased for private use help to defray the expense of operating the public airport, it was not sufficient to render the use of the property public since the property itself must be devoted to a public use. See also, BDT Inc. v. Moore,260 Ark 581, 543 S.W.2d 220 (1976).
In order to assist in a determination of whether property qualifies for exemption the actual activities of the lessor, the purpose of the corporation's charter and use of the particular portion of the property under consideration should be examined and how this relates to a public purpose.
It must be concluded that property cannot be exempt when it serves no governmental function or is not reasonably incidental to the governmental function. The fact that the property will produce revenues which go toward financing governmental functions will not be sufficient to bring property within the purview of the exemption, nor would such ancillary public benefits as set forth in the donation in question of "increased employment opportunities, increased tourism, aesthetic improvements to the area", be such incidental governmental functions to bring the property within the constitutional tax exemption. Moreover, as reasoned in the *Page 8 Schulingkamp case, supra, "To tax private lessees of private lands and not to tax private lessees of public lands would be unjust and inequitable."
We hope this guideline will be of assistance in answer to your second question as to whether property owned by the City and leased for public purpose of improvement of the downtown area should be exempt from ad valorem taxation.
If we can be of further assistance, please do not hesitate to contact us.
 Yours very truly, WILLIAM J. GUSTE, JR.
 _____________________________ BARBARA B. RUTLEDGE Assistant Attorney General *Page 9 
 OPINION NUMBER 93-392
 OPINION NO. 93.392
 4 ASSESSORS
 90-1 PORT COMMISSIONS
 119 TAXATION — Exemptions, general
 148 TAXATION — Property taxes,
 Honorable Geneva F. Odom liability of persons and property
 Assessor Art. VII. Sec. 18(E). 1974 Const.
 East Carroll Parish Art. VII. Sec. 21(A). (C)(11). (D)
 400 First Street Art. VI. Sec. 43-44
 Lake Providence, LA 71254 General discussion of ad valorem tax exempt
 status of four businesses operating on
 property owned by the Lake Providence Port
 Commission.

Dear Ms. Odom:
You have requested an opinion of the Attorney General regarding the ad valorem tax exempt status of several businesses operating on property owned by the Lake Providence Port Commission (Commission). The four businesses in question are:
 (1) Cargill, Incorporated (Cargill), is in the business of purchasing and selling cotton seed.
 (2) Cobra Resources (Cobra), is in the business of transporting coal.
 (3) Bunge Corporation (Bunge), owns a grain elevator.
 (4) Terral River Service (Terral), sells liquid and dry fertilizer, gravel and asphalt mix, and other products.
Initially, it should be noted that the authority to determine whether a particular taxpayer may be exempt from the payment of ad valorem taxes is a factual determination exclusively reserved by Article VII, Section 18(E), of the 1974 Constitution to the Louisiana Tax Commission (LTC). Attorney General Opinion Nos. 92-660, 89-599, and 76-114. While the Attorney General does not have the authority to grant tax exemptions, we would like to assist you and the Commission as to the applicable law which may be used in making individual decisions. *Page 10 
The jurisprudence of this state has consistently held that constitutional and statutory grants of exemption from taxation must be strictly construed in favor of the taxing body, and against the taxpayer desiring the exemption. Any plausible doubt is fatal. Thus, an exemption, being an exceptional privilege, must be clearly, unequivocally, and affirmatively established.Zapata Haynie Corp. v. Larpenter, 583 So. 2d 867 (La.App. 1st Cir. 1991), Writ Denied.
Article VII, Section 21 provides, in pertinent part, the following:
 "Section 21. In addition to the homestead exemption provided for in Section 20 of this Article, the following property and no other shall be exempt from ad valorem taxation:
 (A) Public lands; other public property used for public purposes.
 (C) * * *
 (11) agricultural products while owned by the producer, agricultural machinery and other implements used exclusively for agricultural purposes, animals on the farm, and property belonging to an agricultural fair association;
 (D) (1) Raw materials, goods, commodities, and articles imported into this state from outside the states of the United States:
 (a) so long as the imports remain on the public property of the port authority or docks of the common carrier where they first entered this state;
 (b) so long as the imports (other than minerals and ores of the same kind as any mined or *Page 3 
produced in this state and manufactured articles) are held in this state in the original form in bales, sacks, barrels, boxes, cartons, containers, or other original packages, and raw materials held in bulk as all or a part of the new material inventory of manufacturers or processors, solely for manufacturing or processing; or
 (c) so long as the imports are held by an importer in any public or private storage in the original form in bales, sacks, barrels, boxes, cartons, containers, or other original packages and agricultural products in bulk. This exemption shall not apply to these imports when held by a retail merchant as part of his stock-in-trade for sale at retail.
 (2) Raw materials, goods, commodities, and other articles being held on the public property of a port authority, on docks of any common carrier, or in a warehouse, grain elevator, dock, wharf, or public storage facility in this state for export to a point outside the states of the United States.
 (3) Goods, commodities, and personal property in public or private storage while in transit through this state which are moving in interstate commerce through or over the territory of the state or which are in public or private storage within Louisiana, having been shipped from outside Louisiana for storage *Page 4 
in transit to a final destination outside Louisiana, whether such destination was specified when transportation began or afterward."
Section 21 also affords tax exemptions to new manufacturing establishments, and additions to existing ones, and to structures and inventory located within economic development and/or enterprise zones. We have been advised by Mr. John Jernigan, Office of Commerce and Industry, that there are currently no contracts in existence affording these exemptions to the businesses in question.
Section 21 (A) affords ad valorem tax exemption to public lands and other public property used for public purposes. This general exemption includes all property owned by the state and its political subdivisions. Slay v. La. Energy Power Authority,473 So.2d 51 (La. 1985). The Commission constitutes a political subdivision under Article VI, Sections 43 44 of the 1974 Constitution. Attorney General Opinion Nos. 91-666 and 77-36. Thus, the property owned by the Commission and leased to the four businesses constitutes public property.
The second requirement for ad valorem tax exemption is that the public property be used for a public purpose. Slay v. La. Energy Power Authority, cited supra. Thus, property owned by the Commission and leased to a private entity strictly for private purposes enjoys no exemption and is subject to assessment. As observed by the court in Schulingkamp v. Heaton, 455 So.2d 1181
(La.App. 4th Cir. 1984), Writ Denied:
 "Allowing improvements on tax exempt property to be themselves tax exempt when used for a private purpose would lead to a very inequitable result in this City's tax scheme. To tax private lessees of private lands and not to tax private lessees of public lands would be unjust and inequitable. We do not believe the tax exemption scheme for public lands was intended to allow some more fortunate individuals to escape taxation by the fact that they lease and reside on public lands." *Page 5 
Conversely, the fact that public property is leased to a private entity does not preclude it from being for a public purpose so as to be exempt. Attorney General Opinion Nos. 92-408 and 89-599.
In Charleston County Aviation v. Wasson, 289 S.E. 2d 416
(S.C. 1982) the Constitution provided that exemption from taxation would extend to "all property of the state, counties, municipalities, school districts and other political subdivisions, if the property is used exclusively for a public purpose." The question therein was whether property of the Charleston County Aviation Authority was exempt. The Court observed that property used by a private business entity does not preclude the use from being for a public purpose. It was concluded that air transportation, land transportation, a place to park, and available food all are customarily performed by private business, but are recognized as a necessary part of an airport and incidental to the public use. However, two of the lessees that provided a terminal, fuel and repair facilities, and other incidental services and charters were found to be used for a non-exclusive public purpose in that "the primary beneficiaries of the use of this property are the two private companies." The Court found, as a general rule, a public purpose has for its objective the promotion of public health, safety, morals, general welfare, security, prosperity and contentment of all inhabitants or residents, or at least a substantial part thereof.
In State v. City of Columbia, 115 S.C. 108, 104 S.E. 337
(1920), the Court held the leasing of a theater in the City Hall to a private person still qualified as a public purpose where the revenue was incidental, for it was an expedient way of giving effect to the public purpose for which the theater was often used. Therefore, when the use is for a public purpose, an incidental private use or benefit will not negate or alter that public purpose and use of the property.
Similar reasoning is seen in Tri-County Public AirportAuthority v. Board of County Commissioners, 245 Kan 301,777 P.2d 843, (1989) and Salina Airport Authority v. Board of TaxAppeal, 14 Kan App. 2d 80, 761 P.2d 1261, (1988), where the Court sought to determine if there was governmental use, stating the mere fact the authority received rental income does not constitute "use" within the statute when there was no public function of government being carried out upon the lease property. *Page 6 
Likewise, in Town of Harrison v. Co. of Westchester,246 N.Y.S.2d 593, 196 N.E.2d 240, (1963), the Court held while revenues from hangers leased for private use help to defray the expense of operating the public airport, they were not sufficient to render the use of the property public since the property itself must be devoted to a public use. See also, BDT Inc. v.Moore, 260 Ark 581, 543 S.W.2d 220 (1976).
In order to assist in a determination of whether property qualifies for exemption, the actual activities of the lessee, the purpose of the business' charter, and use of the particular portion of the property under consideration should be examined as to how these factors relate to a public purpose.
It must be concluded that property cannot be exempt when it serves no governmental function or is not reasonably incidental to a governmental function. The fact that the property will produce revenues which go toward financing governmental functions will not be sufficient to bring property within the purview of the exemption.
While the businesses in question do not appear to meet the criteria necessary to "serve a governmental function", such a determination rests upon the shoulders of you, the assessor, and the LTC.
Section 21(C)(1) affords ad valorem tax exemptions to agricultural products while owned by the producer, and agricultural machinery and other implements used exclusively for agricultural purposes. It follows that if the agricultural product has passed out of ownership of the producer, it is no longer exempt from taxation.
In making your determination of exemptions as to agricultural products, the obvious question that arises is what constitutes an "agricultural product". It is well established by numerous authorities that the term, for tax exemption purposes, means a product in its natural state, unchanged by the process of manufacturing. Opinion of the Attorney General, 1934-36, pg. 1168.
As stated earlier, Cargill purchases and sells cotton seed. Assuming cotton seed is an agricultural product, Cargill must be the producer in order for the seed to enjoy exemption from property taxes under Section 21 (C) (11). *Page 7 
Bunge owns a grain elevator. We have been unable to locate any cases addressing the issue of whether a grain elevator constitutes an agricultural implement. However, we have been advised by the LTC that it does not consider grain elevators to be tax exempt.
Terral sells liquid and dry fertilizers which would not appear to be an agricultural product in its natural state, unchanged by the process of manufacturing
Finally, Section 21(D) affords tax exempt status to raw materials, goods, commodities, and articles which are (1) imported into this state from outside the United States, but only if the requirements set forth in Section 21(D)(1)(a)-(c) are complied with, (2) being held for export to a point outside the United States and/or (3) being held in public or private storage while in transit to a final destination outside the State of Louisiana. Again, it is your responsibility, as assessor, to determine which, if any, of these factual situations exist so as to afford exemption from ad valorem taxation.
We hope this information is sufficient and of benefit to you. If we can be of further assistance, please feel free to call upon us at any time.
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY:______________________ ROBERT E. HARROUN, III Assistant Attorney General *Page 8 
 ATTACHMENT
 Mr. Charles L. Hamaker 122 — Taxation — Exemption from property
 Attorney at Law taxes — new industry
 Suite 200-A, Washington Plaza 148 — Taxation — Property taxes — liability
 300 Washington Street of persons property
 P.O. Box 2425
 Monroe, Louisiana 71207 La. Const. (1974) Art. VII. Sec. 21
 R.S. 51:1151, R.S. 51:1152; R.S. 51:1160
 While title to the property is held by the
 Industrial Development Board and property is
 leased to subsidiary of holding company for use
 as office facilities for corporate headquarters
 of holding company and its wholly owned
 subsidiary, property would be exempt from ad
 valorem taxation.

Dear Mr. Hamaker:
On behalf of The Industrial Development Board of The Parish of Ouachita, Louisiana, Inc. (the "Issuer"), you have requested the opinion of this office regarding the proposed issuance of not exceeding $40,000,000 of taxable industrial revenue bonds (the "Bonds") by the Issuer to finance a portion of the acquisition of an office building and related facilities in the Parish of Ouachita (the "Project"). The beneficiary of the financing will be Century Service Group, Inc., a Louisiana corporation ("Company"). This office is advised that Company is a subsidiary of Century Telephone Enterprises, Inc. ("Century"). The facts as presented to this office indicate that Century is strictly a holding company, and that Company is engaged solely in accounting, finance and engineering services. We are further advised that: 1) the Project is not designed for sales or distribution to the public of "services commonly classified as public utilities"; 2) neither Company nor Century are engaged in "the sale or distribution to the public of . . . telephone or other services commonly classified as public utilities" (R.S.51:1151); and 3) the Project will be utilized solely as Century and Company's corporate headquarters.
You have advised that Company will convey the Project to the Issuer, including the real property owned by Company, in stages as each phase is completed, and that the Issuer will enter into a Lease Agreement granting exclusive use and occupancy of the Project to Company. You further advise that Company has agreed to pay to the Issuer specified rental payments and other payments sufficient to pay principal and interest on the bonds. Your letter also states that upon payment to the Issuer of all amounts due on the Bonds, ownership of the Project will be conveyed to the Company. *Page 9 
According to your correspondence, the principal motivation for the issuance of the bonds is the exemption from ad valorem taxes (in accordance with R.S. 51:1160) which will occur as a result of the Issuer taking title to the Project. It is our further understanding that the Issuer will require payments in lieu of taxes, in an amount less than the taxes that would be due if the Project were on the tax rolls of the Parish. We are advised that the reduced payments in lieu of taxes are to serve as an inducement to Company to locate the Project in Ouachita Parish.
With regard to the foregoing, the Issuer asks:
 "Will the Project and the property be considered exempt from ad valorem taxation while leased to the Company if title thereto is held by the Issuer?"
La. Const. (1974) Art. VII, Sec. 21 provides a list of property that shall be exempt from ad valorem taxation. "Public lands; other public property used for public purposes" is included within the list of exempt property.
With regard to Industrial Development Boards, R.S. 51:1152
provides, in pertinent part:
 "A. The legislature hereby finds and determines:
 (1) That the existence, development and expansion of commerce and industry are essential to the economic growth of the state and to the full employment, welfare and prosperity of its citizens;
 * * *
 (4) That the present and future health, safety, right to gainful employment, and the general welfare of the people of the state merit and require the assistance of the state, its agencies, and political subdivisions in the development within the state and its political subdivisions of industrial, agricultural, manufacturing, and research enterprises . . . and in the attraction and retention of sound business and commercial enterprises which contribute to the economic growth and vitality of the state and its political subdivisions; *Page 3 
 * * *
 (6) That the means and measures herein authorized by this chapter and the assistance provided in this chapter, especially with respect to financing, are in the public interest and serve a public purpose of the state in promoting the health, welfare, and safety of the citizens of the state . . . by the securing and retaining of private industrial, commercial and other enterprises and the resulting maintenance of a higher level of employment and economic activity and stability.
 B. It is the intent of the legislature by passage of this Chapter to authorize the incorporation in the several municipalities or in the parishes in this state of public corporations to acquire, own, lease, rent, repair, renovate, improve, finance, sell, and dispose of properties to the end that such corporations may be able to promote industry and develop trade by inducing manufacturing, industrial, commercial and other enterprises to locate in this state and further the use of its agricultural products and natural resources . . . and to acquire, own, lease, rent, repair, renovate, improve, finance, sell, and dispose of properties to the end that such corporations may be able to attract and retain business and commercial enterprises in the municipality or parish to maintain and expand employment and the economy in the area."
Additionally, R.S. 51:1160 pertinently provides:
 "The corporation is hereby declared to be performing a public function on behalf of the municipality or parish with respect to which the corporation is organized and to be a public instrumentality of such municipality or parish. Accordingly, the corporation and all properties at any time owned by it and the income therefrom and all bonds issued by it and the income therefrom shall be exempt from all taxation in the *Page 4 state of Louisiana; provided, however, that the corporation may require the lessee of each of the projects of the corporation to pay annually to parish or municipal taxing authorities, through the normal collecting agency, a sum in lieu of ad valorem taxes to compensate such for any services rendered by them to such projects which sum shall not be in excess of the ad valorem taxes such lessee would have been obligated to pay to such authorities had it been the owner of such project during the period for which such payment is made." (Emphasis added).
Finally, we direct your attention to Attorney General's Opinion No. 88-454, which determined that while property upon which a warehouse and distribution facility were to be erected was leased to the developer, and title to the property was held by the issuer (an Industrial Development Board) of taxable revenue bonds, the property would be exempt from ad valorem taxation.
Based upon the foregoing, it is the opinion of this office that while the property is leased to Company and title to the property is held by the Issuer, the property will be exempt from ad valorem taxation.
Trusting this adequately responds to your request, I remain,
Yours very truly,
 RICHARD P. IEYOUB Attorney General
By: _________________________________ JEANNE-MARIE ZERINGUE Assistant Attorney General *Page 5 
 OPINION NUMBER 98-267
 84-Parishes
 LSA-R.S. 33:2531
Mr. Kevin Conner LSA-R.S. 33:2533
Council Attorney LSA-R.S. 33:2535
Plaquemines Parish Government LSA-R.S. 33:2536
P.O. Box 538 LSA-R.S. 33:2541
Belle Chasse, LA 70037 LSA-R.S. 33:2451A(1-9)
 A single full-time firefighter requires Plaquemine Parish to establish
 a separate firefighter civil service system.

Dear Mr. Conner:
This office is in receipt of your recent opinion request in regard to firefighters and civil service. Specifically, you ask the following three questions:
 1. Does a single full-time firefighter have to be placed in the Civil Service System?
 2. Does a part-time paid firefighter have to be placed in the Civil Service System?
 3. Assuming that either question one or two is answered in the affirmative, can the Plaquemines Parish Government utilize its own Civil Service System and place the firefighter in a separate category underneath that system, or must an entirely new civil service system dedicated to firemen be established?
As you recognize, this office has previously rendered opinions regarding this matter. Most recently, Atty. Gen. Op. No. 95-37, which cited Atty. Gen. Op. Nos. 94-441, 93-728, and 93-728(A), concluded that a "regularly paid fire department" must be placed in the civil service system as required by Art. X, Sec. 16 of the Louisiana Constitution of 1974. These previous opinions, following the interpretation of the State Examiner, say that one full-time firefighter meets the requirement of a "regularly paid fire department" and therefore requires a civil service system.
In reviewing LSA-R.S. 33:2533, which defines terms used when referring to the fire and police civil service law, we find that there is no definition for part-time paid firefighters. LSA-R.S.33:2531 mandates that any permanent appointment for a paid firefighter shall occur only after certification pursuant to the general system. This statute does not *Page 6 
make a distinction between full-time and part-time firefighters. It simply refers to any permanent appointment. Therefore, it is our opinion that under this statute, a part-time paid firefighter should be placed in a civil service system as long as his appointment is permanent and he meets the test set out in LSA-R.S. 33:2541. This statute must be considered when determining whether an employee is classified or unclassified. In order to be classified, the employee must have as a primary duty one of the duties listed in LSA-R.S. 33:2541A(1-9). Therefore, if a part-time firefighter does not have one of the listed duties as his or her primary duty, then he or she should be unclassified.
In regard to your third question, LSA-R.S. 33:2535 and 33:2536
mandate the creation of "The Fire and Police Civil Service" and the fire and police civil service board, respectively. LSA-R.S.33:2535 creates a classified civil service system in each parish government. LSA-R.S. 33:2536 sets out the requirements for creating a fire and police service board. It is our opinion that Plaquemines Parish must create a civil service system for firefighters separate and apart from the government civil service system if it is operating a regularly paid fire department. This is consistent with Atty. Gen. Op. Nos. 93-728(A) and 93-354.
In conclusion, it is the opinion of this office that (1) a single full-time firefighter must be placed in the civil service system; (2) a part-time paid firefighter should not be placed in a civil service system if he or she does not meet the "primary duty" test; and (3) Plaquemines Parish must create a separate civil service system for firefighters as long as it is operating a regularly paid fire department.
We hope this sufficiently answers your questions, but if we can be of further assistance, do not hesitate to contact us.
Yours very truly,
 RICHARD P. IEYOUB ATTORNEY GENERAL
By: _________________________________ ROBERT B. BARBOR Assistant Attorney General *Page 7 
 OPINION NUMBER 05-0301
 122 TAXATION — Exemption from property taxes;
 new Industry
Mr. Francis M. Gowen, Jr. 148 TAXATION — Property taxes — liability of
Pierremont Office Park Phase II persons property
910 Pierremont Road, Suite 107 La. Const. (1974) Art. VII, Sec. 21
Shreveport, Louisiana 71106 La. Const. (1974) Art. VII, Sec. 14
 La. R.S. 51:1152; R.S. 51:1160
 Industrial Development Board property which is leased to
 private company is exempt from ad valorem taxation.

Dear Mr. Gowen:
On behalf of the Industrial Development Board of the Parish of Caddo, Inc. (the "Board") requested an Attorney General's opinion regarding the ad valorem tax exemption of property owned by the Board. You indicated the Board is working with Libbey's Glass Inc. to encourage the plant to remain in Shreveport. The Board, created under Chapter 7 of Title 51 of the Louisiana Revised Statutes of 1950, as amended, (the "Act") plans to issue revenue bonds pursuant to the Act and use the proceeds to acquire land, construct a building, purchase equipment and related facilities to be used as a warehouse and distribution facility in Caddo Parish (the "Project"). The Project will be leased to FR Caddo Parish, LLC (the "Developer") for payments sufficient to pay debt service on the revenue bonds. The Project will be leased to Libbey's Glass Inc. or an affiliate or related company.
You question whether the property owned by the Board pursuant to the Act will be exempt from ad valorem property taxes and whether the Board may require a payment in lieu of taxes in an amount not exceeding the amount that would have been paid in ad valorem taxes.
La. Const. (1974) Art. VII, Sec. 21 provides a list of property that shall be exempt from ad valorem taxation. "Public lands; other public property used for public purposes" is included within the list of exempt property. Article VII, Section 21(A), when referring to the tax exempt status of public property, other than public lands, imposes a two-fold requirement that:
 (1) Title to the property must vest in the public; and
 (2) The property must be used for a public purpose.
See Slay v. Louisiana Energy and Power Authority,473 So.2d 51 (La. 1985).
Industrial Development Boards are nonprofit public corporations organized pursuant to R.S. 51:1151, et seq. for the purpose of promoting the existence, development and *Page 8 
expansion of commerce, trade and industry in this state. With regard to Industrial Development Boards, R.S. 51:1152 provides, in pertinent part:
 A. The legislature hereby finds and determines:
 (1) That the existence, development and expansion of commerce and industry are essential to the economic growth of the state and to the full employment, welfare and prosperity of its citizens;
 * * * * * * * * * * * * * *
 (4) That the present and future health, safety, right to gainful employment, and the general welfare of the people of the state merit and require the assistance of the state, its agencies, and political subdivisions in the development within the state and its political subdivisions of industrial, agricultural, manufacturing, and research enterprises . . . and in the attraction and retention of sound business and commercial enterprises which contribute to the economic growth and vitality of the state and its political subdivisions;
 * * * * * * * * * * * * * * *
 (6) That the means and measures herein authorized by this chapter and the assistance provided in this chapter, especially with respect to financing, are in the public interest and serve a public purpose of the state in promoting the health, welfare, and safety of the citizens of the state . . . by the securing and retaining of private industrial, commercial and other enterprises and the resulting maintenance of a higher level of employment and economic activity and stability.
 B. It is the intent of the legislature by passage of this Chapter to authorize the incorporation in the several municipalities or in the parishes in this state of public corporations to acquire, own, lease, rent, repair, renovate, improve, finance, sell, and dispose of properties to the end that such corporations may be able to promote industry and develop trade by inducing manufacturing, industrial, commercial and other enterprises to locate in this state and further the use of its agricultural products and natural resources . . . and to acquire, own, lease, rent, repair, renovate, improve, finance, sell, and dispose of properties to the end that such corporations may be able to attract and retain business and commercial enterprises in the municipality or parish to maintain and expand employment and the economy in the area. *Page 9 
Additionally, R.S. 51:1160 pertinently provides:
 The corporation is hereby declared to be performing a public function on behalf of the municipality or parish with respect to which the corporation is organized and to be a public instrumentality of such municipality or parish. Accordingly, the corporation and all properties at any time owned by it and the income therefrom and all bonds issued by it and the income therefrom shall be exempt from all taxation in the state of Louisiana; provided, however, that the corporation may require the lessee of each of the projects of the corporation to pay annually to parish or municipal taxing authorities, through the normal collecting agency, a sum in lieu of ad valorem taxes
to compensate such for any services rendered by them to such projects which sum shall not be in excess of the ad valorem taxes such lessee would have been obligated to pay to such authorities had it been the owner of such project during the period for which such payment is made. (Emphasis added).
In Attorney General Opinion No. 77-916 our office concluded that, in accordance with the constitutional and statutory provisions quoted hereinabove, all property held in the name of Industrial Development Boards is exempt from all ad valorem taxation in the State of Louisiana. Additionally, this office previously recognized that the fact that public property is leased to a private entity does not preclude it from being used for a public purpose so as to be exempt. See Attorney General Opinion Nos. 93-392 and 89-599.
Our office previously opined that where property titled in an Industrial Development Board is leased to a developer or other private user, the property is exempt from ad valorem taxation. See Attorney General Opinion Nos. 88-454, 93-642 and 99-267.
While La. R.S. 51:1152 states that the means and measures authorized by that statute are in the public interest and serve a public purpose, please be aware that any project or development undertaken pursuant to R.S. 51:1152 must still comply with the Louisiana Constitution. Article VII, Section 14 of the Louisiana Constitution of 1974 provides, in pertinent part, the following:
 "Section 14. (A) Prohibited Uses. Except as otherwise provided by this constitution, the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private . . ."
Article VII, Section 14 of the Louisiana Constitution clearly prohibits the donation of public funds. Thus the state or any of its political subdivisions may not loan, pledge or donate its funds or anything of value to or for any person when it is under no obligation to do so. See City of Port Allen v. LouisianaMunicipal Risk Agency, 439 So.2d 399 (La. *Page 10 
1983); Beaird-Poulan, Inc. v. Department of Highways, 362 F.Supp. 547 (W.D.La. 1973). In order to comply with Art VII, Section 14, the Board must receive a value or benefit (i.e. rents, creation of new jobs, securing and retaining private industrial, commercial and other enterprises, etc.) reasonably equivalent to the value of the leased property.
Based upon the foregoing, it is the opinion of this office that while the property is leased to the private developer and title to the property is held by the Board, the property will be exempt from ad valorem taxation. Furthermore, the Board may negotiate and require a payment in lieu of tax during the term of the ownership of the Project by the Board and the lease of the Project to the Developer in an amount not in excess of the amount that would be paid in taxes if the Project were subject to ad valorem taxes.
Trusting this adequately responds to your request, we remain
Yours very truly,
 CHARLES C. FOTI, JR. ATTORNEY GENERAL
 By: _________________________________ KENNETH L. ROCHE, III Assistant Attorney General